IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                     No. 05-40083-01-SAC

OSIBISA MCBRIDE,

        Defendant.

MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to suppress evidence (Dk. 29) and defendant's motion to suppress statements (Dk. 30). The government opposes the motions (Dk. 37). Defendant is charged with one count of possession of ammunition after having been convicted of a misdemeanor crime of domestic violence, and, in the alternative, one count of possession of ammunition after having been convicted of a felony. Defendant contends that his statements were taken in violation of Miranda, and that his arrest lacked probable cause. Based upon the undisputed facts and well established law, this motion is meritless.

**Facts**

On May 21, 2005, the Topeka Police Department received a call from Lindsay Williamson, defendant's girlfriend or former girlfriend, that Osibisa

McBride had pointed a handgun at her head in Jay's Bar. Officer Bowers and recruit officer Moore were dispatched to the bar and, upon arriving, found its parking lot and the adjacent lot to the west full of cars. Officer Bowers was familiar with both Osibisa McBride and Lindsay Williamson. As Officer Bowers was waiting for back up, he observed twenty to thirty persons running out of the front of the bar yelling, "He's got a gun!" As soon as backup officers arrived, Officers Bowers and Moore tried to approach the bar. Officer Bowers then saw Lindsay Williamson pointing toward the bar, where Officer Bowers saw a male whom he recognized as defendant, leaving through the front door of the bar.

        Defendant began to run west, through the parking lot, away from the officers. Because defendant had been reported to have been in possession of a firearm, the officer drew his handgun, illuminated defendant with his flashlight, approached defendant and ordered him to lay on the ground. Officer Bowers could see that defendant had no gun in his hands, but noticed that he had a bulge in his lower abdomen, which could have been a concealed gun underneath his clothes. When defendant refused numerous commands to get on the ground, and turned so that the officer could not see his hands, Officer Bowers holstered his service weapon and used a taser on the defendant. Defendant then laid on the ground but refused the officer's instructions to place his hands behind his back, so the officer

used a taser on him again.  Officer Schleder then attempted to handcuff the defendant.

While the officers attempted to subdue and arrest the defendant, other patrons of the bar were actively interfering with the officers' lawful duties.  Officer Bowers described the scene as "total chaos."  A "very intoxicated and angry crowd" was yelling and screaming at the officers and arguing with them.  Several fights broke out in the parking lot during this time, involving officers.  One patron was holding a pool cue, and was ordered to drop it by an officer who had his gun pointed at the threatening patron.  Officer Bowers went to assist that officer.  Two other patrons, described as a "very large male and a very angry female" were screaming at Officer Schleder, who was on top of defendant trying to handcuff him, and refused to move away from the officer.  After the female struck the officer and refused the command to put her hands behind her back, the officer used a taser on her as well.  Officer Bowers arrested those two patrons for battery and/or interference with a police officer.  Officer Schleder felt it was "not a safe environment," and that others present could have had firearms as well.  He waited for assistance to take defendant away from the crowd for safety purposes.

Eventually, officers were able to secure the defendant and remove him to a patrol car, at which time he was searched incident to his arrest.  Officer

Schleder found six rounds of .38 caliber ammunition in a front pocket of defendant's jean shorts, but no gun. This caused Officer Schleder greater concern because when a suspect has ammunition, "he usually has a gun to go with it." Officer Bowers also had safety concerns since he did not know where the firearm might be, which concerns were heightened by the fact that ammunition was found on defendant's person.

Officer Schleder then asked defendant where the gun was, and defendant replied that he had handed it to a subject who went into the bar. Officer Schleder obtained this information from defendant when he was handcuffed and in the patrol car, without having Mirandized defendant.

Several officers then entered the bar to locate and secure the firearm as numerous patrons were still heading out the door. Officers searched the interior of the bar but were unable to locate the firearm or the person to whom defendant allegedly gave the gun.

**Motion to suppress statements**

Defendant alleges that the statements he made about the location of the gun were a result of non-Mirandized custodial interrogation. The government concedes that defendant was subject to custodial interrogation and was not Mirandized, but contends that the "public safety" exception to the Miranda rule

applies. The court agrees.

### General law

The public safety exception provides that an officer may legally question a suspect in custody, pre-Miranda, if the question is based upon an objectively reasonable need to protect the police or the public from any immediate danger associated with a weapon.

> The purpose of the exception is to "free [police officers] to follow their legitimate instincts when confronting situations presenting a danger to the public safety." *Id.* at 659, 104 S. Ct. 2626; *cf. United States v. Fleming*, 917 F.2d 850, 854 (5th Cir. 1990) (*Quarles* public-safety exception did not apply because officer did not have knowledge that plaintiff possessed a firearm).

*United States v. Donachy*, 118 Fed. Appx. 424, 426, 2004 WL 2823347, *2 (10th Cir. 2004). "Whether facts support an exception to the Miranda requirement is a question of law." *United States v. Lackey*, 334 F.3d 1224, 1226 (10th Cir.), *cert. denied*, 540 U.S. 997 (2003).

### Application

No evidence suggests that Officer Schleder's question about the location of the gun was designed to elicit testimonial evidence from defendant. Based upon the officers' knowledge of the gun crime initially reported, the presence of many persons in the vicinity of the bar, the fact that twenty to thirty patrons fled the bar, yelling, "He's got a gun," the general disorderly,

uncooperative and chaotic atmosphere surrounding defendant's arrest, and the live ammunition found on defendant's person, the officers reasonably believed a gun was somewhere in the vicinity of the bar and had an objectively reasonable concern for their own safety and for public safety. *See Donachy,* 118 Fed. Appx. at 427, quoting *Allen v. Roe*, 305 F.3d 1046, 1051 (9th Cir. 2002) ("If the gun was discarded in a public place, it posed a continuing immediate danger because anyone could have found the gun at any time ⋯ and the danger posed by the gun does not dissipate over time."). Accordingly, the officers could legally question the defendant about the location of the gun without first giving him Miranda warnings.

**Motion to suppress evidence**

Defendant next contends that his warrantless arrest lacked probable cause, as it was based solely on an allegation by Ms. Williamson, whom officers knew suffered from mental illness and drug abuse. The government contends that probable cause existed, based on the totality of the circumstances.

   **General law**

A warrantless arrest must be supported by probable cause. *See United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir.), *cert. denied*, 525 U.S. 978 (1998).

> An officer has probable cause to arrest if, under the totality of circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested. Probable cause does not require facts sufficient for a finding of guilt; however, it does require more than mere suspicion.

*United States v. Patane*, 304 F.3d 1013, 1016 (10th Cir. 2002) (quoting *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001)), *rev'd on other grounds,* 124 S. Ct. 2620 (2004). Facts must be founded upon reasonably trustworthy information. *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004).

" 'Probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer.' " *United States v. Snow*, 82 F.3d 935, 942 (10th Cir. 1996) (quoting *United States v. Morgan*, 936 F.2d 1561, 1568 (10th Cir. 1991), *cert. denied*, 502 U.S. 1102 (1992)); see generally *Ornelas v. United States*, 517 U.S. 690, 700 (1996); *United States v. Santana-Garcia*, 264 F.3d 1188, 1192 (10th Cir. 2001). Probable cause for an arrest may be based on the collective knowledge of the police. *United States v. Merritt*, 695 F.2d 1263 (10th Cir. 1982); *see United States v. Miramonted*, 365 F.3d 902, 905(10th Cir. 2004). Thus in determining probable cause, the court looks not only to those facts known by the officer who took the challenged action, but also to the facts known by all officers involved in that action.

**Application**

Defendant's primary challenge to the trustworthiness of the information in the original police report made by Ms. Williamson fails. Although defendant contends that she suffered from mental illness and drug abuse, and that officers knew it, the evidence does not support that contention. Officer Bowers denied knowing that the informant was a drug user, although he suspected it, and did not know she had mental health problems. Officer Schleder testified that he had no knowledge of her drug use, although it was a possibility, and that he was not aware she had mental health problems. The evidence reveals no reason why officers should have discounted her report to the police dispatcher.

Additionally, other facts support a finding of probable cause. Officers received confirmation of at least a part of Ms. Williamson's report upon arriving at the bar and hearing the shouts of the fleeing bar patrons. Defendant exited the bar almost immediately thereafter with an obvious bulge in his clothing, creating a reasonable inference, when coupled with Ms. Williamson's report, that he was the person with the gun.

Further, officers had probable cause to believe that defendant had obstructed or interfered with the official duties of a law enforcement officer when he refused to obey their commands to lie on the ground. *See* City of Topeka Criminal Code, § 54-73. Officers were thus warranted in arresting defendant for

this crime, regardless of probable cause to arrest for the gun crime. *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as 'the circumstances, viewed objectively, justify' the arrest.") (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (a police officer's subjective reason for making an arrest need not be the criminal offense as to which the known facts provide probable cause)).

The court has no hesitation in finding that the officers had probable cause to arrest the defendant, even assuming his arrest occurred at the moment he was handcuffed, prior to the moment live ammunition was found on his person.

IT IS THERFORE ORDERED that defendant's motion to suppress evidence (Dk. 29) and defendant's motion to suppress statements (Dk. 30) are denied.

Dated this 15th day of August, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge